UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JERALD WOMOCHIL,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:22-cv-00321-RDP |
| } | |
| **THE AVERETTE COMPANY, INC., et al.,** } } } | |
| **Defendants.** | |

### MEMORANDUM OPINION

**I.     Introduction**

This case is before the court on both Defendant The Averette Company, Inc.'s Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 38) and Defendant Compensation Solutions, Inc.'s Motion for Summary Judgment (Doc. # 41). The Motions are fully briefed and ripe for review. (Docs. # 38, 40-41, 45-47). For the reasons discussed below, the court concludes that Defendants' Motions are due to be denied.

**II.    Background**[1]

In March 2017, Plaintiff was hired by Rusty Averette ("Rusty") and Manuel Martinez ("Martinez"). (Docs. # 1 ¶ 9; 39-9, pp. 25:23-26:21). Plaintiff alleges he was hired to work for both The Averette Company, Inc. ("The Averette Company") and Compensation Solutions, Inc. ("Compensation Solutions") (collectively "Defendants"). (Doc. # 1 ¶¶ 10-11).

---

[1] The facts set out in this section are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party, although factual disputes are acknowledged. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

The Averette Company d/b/a Restoration Management Services ("RMS") is no longer in business; however, when it was operating it did restoration work, usually related to insurance claims. (Docs. # 39-1, p. 17:1-22; 39-17, p. 29:3-14; 40 at 3). Compensation Solutions d/b/a People HR is a temporary employment agency and provides staffing for various industries. (Doc. # 39-1, pp. 13:5-12; 15:8-11). Both entities operated out of the same address and were owned by Rusty. (Doc. # 39-1, pp. 11:7-12:8; 18:9-15). At all relevant times, several accountants hired by People HR handled the finances for The Averette Company. (Doc. # 39-1, pp. 25:13-29:12).

When he was hired, Plaintiff was around fifty-eight (58) years old. (Doc. # 39-16). Initially, Plaintiff was paid 15 percent of the gross price of every contract he signed with a $1,000 weekly draw. (Doc. # 39-9, pp. 26:22-27:4; 29). Plaintiff was originally hired to cold call potential clients. (*Id.* at p. 34:6-21). Later, he was transferred to an estimator position. (*Id.*). There were two other estimators working for Defendants when Plaintiff was hired, both of whom were in their sixties. (Doc. 39-9, p. 44:6-16).

Around February 2020, Richard Elledge ("Elledge"), who was about 39 years old at the time, was hired to work for Defendants. (Doc. # 39-17, pp. 79:14-16). Around that same time, Elledge and Rusty entered into an agreement where Elledge used a portion of his earned profit to pay for 25 percent of The Averette Company. (Docs. # 39-19; 39-17, pp. 13:2-21, 15:3-16:14). Under this agreement, Elledge was scheduled to pay Rusty $50,000 over three years. (*Id.*). According to Plaintiff, Elledge was also being paid 20 percent commission for every contract he signed. (Docs. # 1 ¶ 32; 39-9, pp. 50:23-51:2).

Plaintiff alleges that, throughout his employment, Martinez — who served as his direct supervisor — mistreated Plaintiff in numerous ways because of his age. Plaintiff claims Martinez often made derogatory comments about Plaintiff's age (Docs. # 1 ¶¶ 23, 26-28, 33; 39-9, p. 50:3-

2

22) and decreased his commission (Doc. # 39-9, pp. 47:20-50:2). Starting in January 2021, rather than receiving 15 percent gross contract price, Plaintiff was to be paid a 10 percent commission for any contracts assigned to him and a 15 percent commission for any contracts he originated. (*Id.*). All this came to a head around April 6, 2021 when Martinez told Plaintiff that he was being fired and replaced with someone younger. (Docs. # 1 ¶ 33; 39-9, pp. 51-53). Plaintiff was terminated on April 22, 2021. (Doc. # 39-8).

Plaintiff filed this suit under the Age Discrimination in Employment Act ("ADEA"). (Doc. # 1). In his Complaint, Plaintiff asserts that he was terminated and paid less than a similarly situated younger employee because of his age. (*Id.*).

## III.  Legal Standards

Defendant The Averette Company argues that under Federal Rule of Civil Procedure 12(b)(1), the court lacks subject matter jurisdiction over this case. (Doc. # 40). Alternatively, The Averette Company asserts that Plaintiff cannot meet his burden under the ADEA and thus the case should be dismissed under Rule 56. (*Id.*). Defendant Compensation Solutions makes the same argument. (*Id.*).

### A.  Rule 12(b)(1)

"A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction." *Se. Bank, N.A. v. Gold Coast Graphics Grp. Partners*, 149 F.R.D. 681, 683 (S.D. Fla. 1993) (citing *Stanley v. Cent. Intel. Agency*, 639 F.2d 1146, 1157 (5th Cir. 1991)); *Marshall v. Gibson's Prods., Inc. of Plano*, 584 F.2d 668, 671-72 (5th Cir. 1978)). Thus, under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss, arguing that the court lacks subject matter jurisdiction. Such a motion should be granted "'only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.'" *Harris*

*v. Bd. of Trustees Univ. of Ala.,* 846 F. Supp. 2d 1223, 1232 (N.D. Ala. 2021) (quoting *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)).

A party may raise a facial or factual challenge to the complaint under Rule 12(b)(1). *McElmurray v. Consol. Govt. of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "Facial attacks on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)) (other citations omitted). On the other hand, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

When a party makes a factual attack on subject matter jurisdiction, "[the] court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." *Id.* When a Rule 12(b)(1) motion attacks the merits, a court should review that motion under the standards for a Rule 12(b)(6) motion to dismiss for failure to state a claim, or, if considering matters outside the pleadings, under the standards for a Rule 56 motion for summary judgment. *See Garcia*, 104 F.3d at 1261 (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981))[2]; *see also Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2007) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). The burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction. *Harris*, 846 F. Supp. 2d at 1223.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**B.     Rule 56**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and — by pointing to affidavits, or depositions, answers to interrogatories, or admissions on file — designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003)

(quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### C. The Standard for Determining Who is an Employer Under the ADEA

Defendant The Averette Company argues in its Motion that the court lacks subject matter jurisdiction because it had fewer than 20 employees between 2017 and 2022 and thus does not qualify as an "employer" under the ADEA. (Doc. # 40).

Though The Averette Company argues its classification as an "employer" is a matter of jurisdiction, "the question of whether or not a defendant is an 'employer' is a substantive element of an ADEA claim and intertwined with the question of jurisdiction." *Garcia*, 104 F.3d at 1264; *see also* 29 U.S.C. § 623(a)(1). So, to analyze employer classification under the ADEA, the fact finder must evaluate the claim. *Id.* Thus, The Averette Company's Motion attacks the merits of Plaintiff's cause of action along with jurisdiction.

To determine whether a reasonable jury could find The Averette Company was an "employer" for purposes of an ADEA claim, the court will rely on the pleadings as well as matters outside the pleadings. That said, this court will consider both motions "under the standards that apply to a Rule 56 motion for summary judgment." *See Garcia*, 104 F.3d at 1261 (quoting *Williamson*, 645 F.2d at 415-16).

### IV. Analysis

Defendants The Averette Company and Compensation Solutions filed separate motions for summary judgment. But some of their arguments overlap. First, they each argue there is no genuine dispute of material fact as to their status as an "employer." Defendants argue: (1) The Averette Company is not an employer as defined by the ADEA, (2) Compensation Solutions was never

6

Plaintiff's employer, and (3) Defendants did not operate as an integrated enterprise. (Docs. # 40-41). In addition, The Averette Company also argues that, because Plaintiff cannot prove he was replaced by or paid less than a significantly younger employee, there is no genuine dispute of material fact. (Doc. # 40 at 19). The court analyzes both arguments below.

### A.   Whether Defendants are aggregated entities under the ADEA is a question for the jury.

To establish discrimination under the ADEA, a plaintiff must prove his employer discharged or otherwise discriminated against him because of his age. *See Garcia*, 104 F.3d at 1263-64 (citing 29 U.S.C. § 623(a)(1)). So, it is axiomatic that a plaintiff must show, among other things, that his employer is an "employer" within the meaning of the statute.

In assessing who is an "employer" under the ADEA, the Eleventh Circuit has held that courts may look to Title VII cases, while of course keeping in mind a notable difference between the two statutes' definitions of "employer." *Garcia*, 104 F.3d at 1263-64. That difference relates to the number of employees necessary for statutory coverage. The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees…." 29 U.S.C. § 630(b). Title VII typically covers employers with fifteen or more employees. 42 U.S.C. § 2000e(b). The Eleventh Circuit liberally construes the term "employer" under Title VII, *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999), and the same principle applies under the ADEA.

In certain cases, the court may look "beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether plaintiff's 'employer' comes within the coverage of [the statute]." *Id.* The Eleventh Circuit recognizes three theories under which multiple entities may be aggregated as employers: (1) the single employer/integrated enterprise; (2) joint employers; and

7

(3) the agency relationship. *Id.* Plaintiff argues that Defendants should be aggregated as employers under either the "single employer/integrated enterprise" test or the "joint employers" test. Regardless of what test applies, the key question is "the degree of control an entity has over the adverse employment decision" at issue in the case. *McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1271-72 (N.D. Ala. 2013) (quoting *Llampallas v. Mini-Circuits, Labs, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998)).

It is undisputed that Compensation Solutions employs over 200 employees, a number that easily surpasses the number of employees required for ADEA coverage. It is also undisputed that Plaintiff was an employee of The Averette Company. As discussed below, because Martinez worked in management for both those Defendants, if Defendants constitute an aggregated entity, then they would each constitute an "employer" under the ADEA, and the court need not address Defendants' remaining arguments about their employer status. Accordingly, the court starts — and as it turns out ends — with the question of whether Defendants should be aggregated entities for liability purposes under the ADEA.

### 1. The Single Employer/Integrated Enterprise Test

The "single employer" or "integrated enterprise" test applies when "two ostensibly separate entities are 'highly integrated with respect to ownership and operations.'" *Lyes*, 166 F.3d at 1341 (quoting *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933) (internal citations omitted). In the Eleventh Circuit, courts evaluate whether two entities are integrated enterprises by "apply[ing] the [factors] promulgated by the National Labor Relations Board." *Mckenzie*, 834 F.2d at 933; *Radio & Television Broadcast Techs. Loc. Union 1264 v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965)[3]. Those factors include: "(1) the degree of interrelatedness of

---

[3] The single employer test was originally used under Title VII, borrowing factors articulated by the NLRB. Since then, the single employer test has expanded, applying to other employment statutes like the ADEA. *See Long v.*

8

operations, (2) the degree of centralized control of labor relations, (3) the presence of common management, and (4) common ownership or financial control." *Virciglio v. Work Train Staffing, LLC*, 674 F.App'x 879, 889 (11th Cir. 2016) (citing *Lyes*, 166 F.3d at 1341). Every factor need not be present to consider two entities an "integrated enterprise," nor is any single factor controlling. *Lyes*, 166 F.3d at 1361 n.5.

After careful review of the Rule 56 record, and for the reasons noted below, the court finds that there is a genuine issue of material fact over whether Defendants were "highly integrated with respect to ownership and operations." *Lyes*, 1366 F.3d at 1341.

### i. Interrelation of Operations

Operations are considered interrelated where there are shared management services, such as check writing and contract negotiations, shared payroll and insurance programs, mutual policy manuals, and employees paid by one entity doing work for a separate entity. *Landon v. Agatha Harden, Inc.*, 6 F. Supp. 2d 1333, 1339 (M.D. Ala. 1998); *see Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726-27 (N.D. Ala. 1981) (finding common ownership and management between two entities that were in the same building, shared bookkeeping staff, occasionally interchanged employees, and had common incorporators, officers, directors, and stockholders); *see Phillips v. Bd. of Trustees of the Uni. of Ala.*, 218 F. Supp. 3d 1297, 1305 (N.D. Ala. 2016) (considering factors like combined accounting records, bank accounts, lines of credit, payroll preparation, switchboards, telephone numbers, and offices).

Both Defendants operated in the same building, which was interconnected and allowed employees to walk freely between the two office spaces. (*Id.*; Doc. # 39-22, p. 38:8-18). Plaintiff also has presented evidence of a high degree of shared financial control between Defendants. (Doc.

---

*Aronov Realty Mgmt., Inc.*, 645 F. Supp. 2d 1008, 1030 n.49 (M.D. Ala. 2009); *Player v. Nations Biologics, Inc.*, 993 F. Supp. 878, 881-82 (M.D. Ala. 1997).

# 46 at 8). It is undisputed that Defendants used the same bank (Doc. # 39-1, p. 32:12-19), but admittedly, this alone is not enough to support a finding of interrelatedness. *See Cardinale v. S. Homes of Polk Cty., Inc.*, 2008 WL 788460, *9 (M.D. Fla. Mar. 19, 2008) ("[R]ejecting single employer status…where one company reimbursed the other for payroll and other services" and where companies had few common management services). But, there is more. Accountants working for People HR managed the finances for both Defendants. (Doc. # 39-1, pp. 25:13-29:12; 36:5-38:5). Additionally, in 2020, Defendants made at least four wire transfers involving large sums of money between each other and with a third seemingly shared bank account. (Docs. # 45-2 - 45-7). These transfers ranged from $100,000 to $200,000. (*Id.*). In January 2021, The Averette Company also made an "intercompany transfer" involving $5,000. (Docs. # 39-7; 45-8). Who received that monetary transfer is unclear, but Rusty testified that the recipient may have been one of his other entities with accounts at Cadence Bank. (Doc. # 39-1, pp. 73:12-74:7).

There are also genuine issues about the overlap of payroll records. Between 2017 and 2021, Plaintiff was an employee of Compensation Solutions while doing work for The Averette Company, receiving a W-2 Form and payments from Compensation Solutions. (Docs. # 39-4 at 1-3; 39-5; 39-6; 39-15; 39-18 at 1-4). In February 2021, Plaintiff became an employee of and received payments from The Averette Company d/b/a RMS. (*Id.*). Based on the testimony from Plaintiff and Elledge, it is unclear whether either Defendant notified employees about this change, creating a dispute about the payroll records for Defendants. (Docs. # 39-1, pp. 56:7-56:21, 62:6-63:14; 39-17, pp. 40:5-41:7, 55:12-14).

### ii. Centralized Control of Labor Relations and Common Management

In this case, these two factors are so closely related that the court will evaluate them together. Centralized control of labor relations focuses on the "actual and active control of day-to-

day labor practices." *Fike*, 514 F. Supp. at 727; *see Phillips*, 218 F. Supp. 3d at 1306 (focusing on each entity having separate human resources, employment policies, and retirement plans to show a lack of centralized labor relations). This centralized control must extend to the area of personnel for the two entities to be treated as one. *Id.* The court also considers several "indicia of control" such as "the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; and the obligation to pay or the duty to train the charging party." *Lyes*, 166 F.3d at 1345 (quoting *Oaks v. City of Fairhope, Ala.,* 515 F. Supp. 1004, 1035 (S.D. Ala. 1981)) (internal citations omitted). The central question is the degree of control an entity has over the adverse employment decision. *See Llampallas,* 163 F.3d at 1244.

Common management is self-explanatory, and little elaboration is necessary as to what is needed to satisfy this factor. Courts place a heavy emphasis on common directors and officers when evaluating common management. *Fike*, 514 F. Supp. at 727.

The record is less than clear about each Defendant's corporate structure and how they relate to one another. But, it is undisputed that Plaintiff worked for both Compensation Solutions and The Averette Company. (Docs. # 39-4 at 1-3; 39-5; 39-6; 39-15; 39-18 at 1-4) [4]. At the same time, it is unclear how much control Compensation Solutions had over Plaintiff during the relevant timeframe. The parties also dispute the extent to which Compensation Solutions controlled certain employees of The Averette Company. Rusty testified that certain employees, like Plaintiff, were pseudo-subcontractors, initially hired by Compensation Solutions in 2017 and "leased" to The Averette Company until February 2021. (Docs. # 39-18 at 2-3; 39-1, p. 45:6-14; 39-1, p. 45:11-19). One problem is that there is no documentation of the terms of this purported "lease." (Doc.

---

[4] Compensation Solutions argues in its Motion that Plaintiff cannot satisfy his burden under the ADEA because he testified to only working for RMS. But the Rule 56 record makes it clear that Plaintiff did work for Compensation Solutions during the relevant time period.

39-1, p. 45:15-22). Because there are no documented terms for this arrangement, there remain questions about the degree of control Compensation Solutions had over Plaintiff during the leasing period, especially given the managerial overlap between Defendants as discussed below.

Though the parties dispute the extent to which Compensation Solutions controlled certain employees of The Averette Company, the record does show that Plaintiff received payments from Compensation Solutions until 2021, when he began receiving payments from The Averette Company. (Docs. # 39-4 at 1-3; 39-5; 39-6; 39-15; 39-18 at 1-4).

The record is clear that The Averette Company had at least five employees during the relevant timeframe (Doc. # 39-18 at 2), but the parties dispute the number of The Averette Company's *total* employees. Rusty testified that there were some vendors and contractors who were "internal" employees for The Averette Company. (Doc. # 39-1, pp. 51:6-53:20). While Rusty remembered one, Luis M. Aguirre, he did not recall who the others were. (*Id.*). Rusty was also unaware of whether certain workers[5] were employees paid by The Averette Company or subcontractors. (Doc. 39-1, pp. 51:6-53:15). There is no dispute, however, that Martinez was an employee of both Defendants, actively managing the day-to-day operations of and supervising the estimators for RMS while recruiting contractors to work for both Compensation Solutions and RMS. (Docs. # 39-1, pp. 19:20-20:5; 48:11-49:14; 50:10-51:5; 67:3-68:14).

### iii. Common Ownership and Financial Control

Common ownership is another self-explanatory factor. When determining common ownership, courts simply ask who owns the companies. *See Cruz-Lovo v. Ryder Sys., Inc.,* 298 F. Supp. 2d 1248, 1254 (S.D. Fla. 2003). The record shows that, at all times relevant, both Defendants were owned by Rusty and their finances were managed by accountants working for Compensation

---

[5] Here, the court purposefully uses the term "workers" because there is uncertainty whether some unnamed people who worked for RMS were employees or independent contractors of the entity.

Solutions d/b/a People HR. (Doc. # 39-1, pp. 11:7-12:8; 18:9-15; 25:13-29:12; 36:5-38:5). Both Defendants operated out of the same building. (Doc. # 39-9, pp. 30:20-31:23). While the record is unclear on the management structure for Compensation Solutions, it is undisputed that, in some capacity, Rusty was the individual over management and personnel for both Defendants. (Doc. # 39-4 at 1-5).

Although this is far from a home run for Plaintiff, the court finds that Plaintiff has presented sufficient evidence to create a question of fact for the jury as to whether The Averette Company and Compensation Solutions constitute a single, integrated enterprise for employer classification under the ADEA. Therefore, Defendants' motions for summary judgment are due to be denied on these arguments.

> **B.    A reasonable jury could find Plaintiff provided direct evidence sufficient for his ADEA claim.**

Along with arguing it is not an "employer" under the ADEA (which the court has already addressed), The Averette Company raises a second argument in its motion for summary judgment. It contends that Plaintiff cannot prove he was replaced by a significantly younger employee because "Richard Elledge purchased 25 percent of [The Averette Company] … over a year prior to [Plaintiff's] termination." (Doc. # 40 at 19) (emphasis omitted). This is the only argument The Averette Company raises in its motion regarding Plaintiff's prima facie case. In his response, Plaintiff argues that he presented direct evidence to support his claims. (Doc. # 46 at 28-29). In the alternative, Plaintiff argues that Elledge is an appropriate comparator to establish a prima facie case of discrimination. (*Id.* at 29-32).

For Plaintiff to succeed on his ADEA claim, Plaintiff must prove that The Averette Company terminated him and/or decreased his pay because of his age. *See* 29 U.S.C. § 623(a)(1).

13

The Averette Company does not dispute that Plaintiff was terminated or paid less, but it does dispute that either decision was due to Plaintiff's age.

"A plaintiff in an ADEA claim may 'establish a claim of illegal age discrimination through either direct or circumstantial evidence.'" *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010) (quoting *Van Voorhis v. Hillsborough County Bd. of County Comm'rs*, 512 F.3d 1296, 1300 (2008)). The Eleventh Circuit defines direct evidence as "evidence, which if believed, proves [the] existence of fact in issue without inference or presumption.'" *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987)). Meanwhile, "[c]ircumstantial evidence only suggests, but does not prove, a discriminatory motive." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921-22 (11th Cir. 2018) (Title VII case). When analyzing an ADEA claim based on circumstantial evidence, the test established in *McDonnell Douglas Corp. v. Green*[6] can be used. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). But, if a plaintiff presents a direct evidence case, then applying the *McDonnell Douglas* burden-shifting test is inappropriate. *Jefferson*, 891 F.3d at 922 (quoting *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990)).

Plaintiff alleges that Martinez made several comments to Plaintiff indicating a desire to replace him with a younger employee. (Docs. # 1 ¶¶ 23, 26-28, 33; 39-9, p. 50:3-22). He claims that Martinez made comments such as "you're so slow" and "you have [the] memory of an old man." (Doc. # 39-9, p. 50:3-16). Plaintiff also alleges that Martinez made disparaging comments during a conversation shortly before his termination:

> It was at the office, and I'm not sure who might have heard it, if there were other people there. And he [] said it more than once. And sometimes he said he was going to have to fire me and hire two young men because he could hire two young men for what I was making, and that they'd be able to do better and move faster and jump high buildings and all that bull. [] Although I know it was just kind of a

---

[6] 411 U.S. 792 (1973)

>  common conversation comment, and I'm sure everybody in the office at one point
>  or another heard it, so that's, you know. [] Just that he would -- I mean, not like he
>  said it behind closed doors in his office. He would say crap like that all the time.

(Doc. # 39-9, p. 52:7-22).

The Eleventh Circuit has found that an employer's statements may constitute direct evidence when those statements reflect a discriminatory attitude correlating to the discrimination complained of by the employee. *Merritt,* 120 F.3d at 1189-90 (listing cases in which the Eleventh Circuit has concluded there was direct evidence); *Van Voorhis*, 512 F.3d at 1300 (finding that the plaintiff presented direct evidence by alleging her manager stated, "he didn't want to hire an old pilot."). However, "not every comment concerning a person's age presents direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (citing *Young v. Gen. Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1989)). For example, comments referencing characteristics associated with increasing age do not constitute direct evidence. *Id.* Thus, "in the age discrimination context, the quintessential example of direct evidence would be a management memorandum saying, 'Fire Earley – he is too old.'" *Merritt*, 120 F.3d at 1190 (quoting *Early v. Champion Intern. Corp.*, 907 F.2d 1077, 1081) (internal citations omitted).

Though the casual comments about Plaintiff's age may not classify as direct evidence, the conversation between Plaintiff and Martinez before Plaintiff's termination is a closer question. When relying on Plaintiff's testimony, the court finds little daylight between the Eleventh Circuit's "quintessential example" of direct evidence and Martinez's statements to Plaintiff. Thus, if a reasonable jury believes Plaintiff's recitation of his termination, Martinez's statements "prove[] the existence of discriminatory intent without inference or presumption" as to both wage discrimination and wrongful termination. *Jefferson*, 891 F.3d at 921-22 (finding that the plaintiff's sworn testimony of the manager's discriminatory comments was direct evidence).

"In the face of direct evidence, an employer must prove that the same employment decision would have been made absent any discriminatory intent." *Carter*, 870 F.2d at 582. In fact, "where direct evidence of discrimination exists, a defendant has a much higher burden than it would where only circumstantial evidence is available." *Rollins*, 833 F.2d at 1528 n.6. Because Defendants fail to address whether the same employment decisions would have been made absent Plaintiff's age, this is not a summary judgment case. Therefore, Defendant The Averette Company's Motion is due to be denied.

Because the court finds that a jury could consider Plaintiff's testimony about the conversation with Martinez direct evidence, the *McDonnell Douglas* burden-shifting framework does not apply here. *See Jefferson*, 891 F.3d at 922. Further, even if Martinez's remarks do constitute direct evidence, that does not mean Defendants are entitled to summary judgment. An ADEA plaintiff is not restricted to presenting direct evidence or even using the *McDonnell Douglas* framework to present substantial evidence that creates a genuine issue of material fact.

"When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that []he belongs to a protected class, (2) that []he was subjected to an adverse employment action, (3) that []he was qualified to perform the job in question, and (4) that [his] employer treated 'similarly situated' employees outside [his] class more favorably." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) ("*Lewis I*"). The Averette Company argues that Plaintiff fails to satisfy the fourth element of *McDonnell Douglas* because Elledge is not a valid comparator under the standard. But, the court need not determine whether Elledge is a comparator "similarly situated [to Plaintiff] in all material respects." *Id.* at 1226. In fact, the court can analyze Plaintiff's Rule 56 evidence without using *McDonnell Douglas* at all. The Eleventh Circuit has noted that

16

"'establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case.' Even without similarly situated comparators, 'the plaintiff will always survive summary judgment if he…presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*") (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Here, Plaintiff, at a bare minimum, presented circumstantial evidence to create a genuine issue of material fact for the jury to resolve. *See Mora*, 597 F.3d at 1204 (holding that "[b]ecause Plaintiff's account of her termination is at least circumstantial evidence of discrimination" making "[t]he resolution of [the] case depend[ent] on whose account of the pertinent conversations a jury could credit," summary judgment was incorrectly granted). Therefore, even if Plaintiff has not presented direct evidence and even if Plaintiff has not established a prima facie case, The Averette Company's Motion is still due to be denied because of what Plaintiff has done: at a minimum, he has presented circumstantial evidence of age discrimination sufficient to raise a fact issue for a jury (not this court) to decide.

**V.      Conclusion**

For these reasons, Defendant The Averette Company, Inc.'s Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 38) and Defendant Compensation Solutions, Inc.'s Motion for Summary Judgment (Doc. # 41) are due to be denied.

A separate order will be entered contemporaneous with this memorandum opinion.

**DONE** and **ORDERED** this February 21, 2024.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE